Whitaker, Judge,
delivered the opinion of the court.
The plaintiff seeks to recover from the defendant just compensation for the alleged taking by the defendant of a portion of its lands embraced within the Wewoka townsite.
By an act of the General Council of the Seminole Nation, approved April 23,1897, a townsite commission was created, which, in the exercise of the authority conferred by that act, acquired a tract of approximately 640 acres, divided it into lots, blocks, streets, and alleys, and proceeded to sell the lots. By February 12, 1900, 7 lots had been disposed of. On that date the balance of some 3,132 lots were disposed of to John. F. Brown, the Principal Chief of the Nation, for $12,000. This sale was not in accordance with the act of the Seminole Nation, in that it relieved John F. Brown of the requirement to erect a building or buildings on the lots purchased within six months thereafter. The sale, however, was ratified and confirmed by the Seminole General Council on April 18, 1900, and on March 3, 1905, the Congress of the United States ratified and confirmed this resolution of the Seminole National Council. (33 Stat. 1048, 1068.)
On June 6, 1901, prior to the ratification by the Congress, the lots had been conveyed to the Wewoka Realty and Trust Company, a company controlled by John F. Brown and his brother, which proceeded to sell them at prices averaging, according to one witness, from $80.00 to $100.00, and according to another one, from $150.00 to $200.00 a lot. Also prior to the passage of the act, a communication had been directed to the Attorney General questioning the legality and the bona fides of the sale to Brown. The Assistant Attorney General for the Interior Department held that the sale was *215 illegal and recommended to the Congress legislation authorizing the making of an equitable adjustment between the bona fide purchasers of the townsites and the Seminole Nation. Also, the Secretary of the Interior, on the recommendation of the Commissioner of Indian Affairs, recommended against the confirmation of the action of the Seminole Council on the ground that the sale to Brown was illegal, but not on the ground that the price paid was inadequate, or that the transaction was tainted with fraud. The act of March 3, 1905, was passed under these circumstances.
The plaintiff says that the price was grossly inadequate, that the sale was a fraud on plaintiff’s rights, and that it was made in violation of the Seminole agreement between the United States and the plaintiff, and that its ratification by the Congress under these circumstances amounts to a taking of plaintiff’s land by the United States. We think this position is clearly untenable.
The United States did not appropriate the land for its own benefit, nor did it appropriate it for the benefit of another, unless the sale to Brown was fradulent and the United States was a party to the fraud. If the United States participated in any fraud that may have been committed, it did so in the passage of the act of March 3, 1905. Is it to be supposed that Congress, in the passage of the act conferring jurisdiction on this court in this case, intended to confer jurisdiction on us to inquire if one of its former acts was fraudulent ? Undoubtedly it did not. Such an intention would have to be manifested by the clearest and most explicit language. Jurisdiction to render judgment “in any and all legal and equitable claims” certainly cannot be construed to embrace a claim founded upon an allegation that a former act of Congress was fraudulent. Klamath Indians v. United States (No. E-346), 81 C. Cls. 79; 296 U. S. 244, 254, 255.
To show fraud the plaintiff relies solely on the alleged inadequacy of the price paid and the fact that the purchaser was the Principal Chief of the Seminole Nation, and *216 that the Congress when it passed the act of March 3, 1905, was cognizant of these facts. This falls short of sufficient proof of fraud, and far short of sufficient proof that the United States was a party to a fraud. The sale was ratified by the Seminole Council on April 18, 1900. There is no proof that the Council was misled as to any fact within the knowledge of Brown, or that Brown had knowledge of any material fact which was not known to the Council. Mere inadequacy of price, if such be the case, is insufficient to establish fraud. Congress, when it passed the act of March 3, 1905, had before it the recommendation of the Secretary of the Interior and the Commissioner of Indian Affairs and the opinion of Assistant Attorney General Campbell. The recommendations of the Commissioner of Indian Affairs and of the Secretary of the Interior were based solely on the alleged illegality of the sale. Neither made any mention of inadequacy of price or of any other evidence of fraud. The opinion of Assistant Attorney General Campbell, it is true, suggested a doubt as to the bona f/les of the transaction, but his opinion stated expressly that it was not grounded upon fraud, but rather on the lack of power of the commissioners to make the sale under the relevant statutes. So far as the proof shows, this was the extent of the information before Congress at the time of the passage of the act. Certainly no one can be heard to say that this warrants- the conclusion that Congress, in ratifying and confirming the act of the General Council of the Seminole Nation, participated in any fraud that may have been committed.
For the reasons stated, plaintiff’s petition will be dismissed. It is so ordered.
Littleton, Judge; Green, Judge; and Whaley, Chief Justice, concur.